FRANTZ EQUIPMENT CO. v. UNITED STATES.

No. 49773.

United States Court of Claims.

June 3, 1952.

Harry Norman Ball, Philadelphia, Pa., for plaintiff.

Julian R. Wilheim, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., Washington, D. C., Louis R. Mehlinger, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The plaintiff, a Pennsylvania corporation with principal place of business in Philadelphia, was organized June 1, 1947, and is the successor to the Frantz Equipment Company, a partnership, which, prior to June 1, 1947, was engaged in business in Philadelphia.

On December 28, 1943, the partnership entered into a contract with the United States, through the War Department, No. W–36–109–eng–279, under which the partnership agreed to supply certain labor and materials in connection with the rebuilding and reconstruction of heavy equipment for the defendant. Plaintiff's original petition was filed herein on August 10, 1950. The amended petition alleges that this contract was fully performed between June 12 and July 18, 1944, and that there became due the partnership for such performance and in accordance with the terms of the contract the sum of $12,727.21.

On September 15, 1944, the partnership entered into a second contract with the de-

fendant through the War Department, No. W–30–082–eng–2348, for the furnishing of labor and materials in connection with the rebuilding and reconstruction of certain additional heavy equipment for the defendant, and in the petition filed herein, as above mentioned, plaintiff alleges that there became due from the defendant under this contract the sum of $14,464.03. This contract was performed between February 5, 1946, and December 28, 1949, pursuant to procurement orders issued by defendant.

█ Upon incorporation of the business of the partnership these contracts and the right to receive the amounts due thereunder passed to plaintiff by operation of law.

The defendant has not paid any portion of the amounts of $12,727.21 and $14,464.03, alleged to be due under the aforementioned contracts, but withheld payment of said sums totaling $27,191.24, as stated in the petition, "on account of an unliquidated, contested and undetermined unilateral determination by the Under Secretary of War of excess profits allegedly realized by Frantz Equipment Company for the fiscal year ending September 30, 1942," under other contracts with the United States. This renegotiation determination was made December 20, 1943, in the gross principal amount of $60,000. The Secretary of War made demand upon plaintiff's predecessor to refund to the United States the amount so determined as excessive profits but plaintiff's predecessor, the Frantz Equipment Company, a partnership, and the plaintiff have refused to make such refund.

Thereafter, on July 28, 1945, the United States, through the U. S. District Attorney for the Eastern District of Pennsylvania, instituted a Civil Action No. 5029 in the U. S. District Court for the Eastern District of Pennsylvania, entitled *United States of America, Plaintiff, v. William H. Frantz, H. P. Frantz, J. J. McDevitt, individually and as copartners doing business, as Frantz Equipment Company, a copartnership, Defendants."* This suit was instituted in the District Court by the United States under Section 403 of the Renegotiation Act of 1942, 50 U.S.C.A. Appendix, § 1191, and prayed for a net judgment of $58,815.80, with interest at

six percent from December 20, 1943. Paragraphs 5, 8 and 9, of the Complaint of the United States as Plaintiff, in said suit, contained, among others, the following allegations:

"5. After notice to defendants, proceedings for the renegotiation of defendants' contracts and subcontracts for its fiscal year ending September 30, 1942, were had and conducted by representatives of the Secretary of War. Thereafter and on the 20th day of December 1943, the Under Secretary of War, acting under and by virtue of the Renegotiation Act and pursuant to authority delegated to him duly determined that of the profits realized by defendants during their fiscal year ended September 30, 1942 on their contracts and subcontracts subject to renegotiation Sixty Thousand Dollars ($60,000.00) thereof were excessive profits.

\*　\*　\*　\*　\*　\*

"8. Defendants have not petitioned the Tax Court of the United States for a redetermination of the order made by the Under Secretary of War as provided in Section 403(e)(1 and 2) of the Renegotiation Act, and the period for filing such petition has expired.

"9. Defendants have not paid to the United States any of the sums demanded. The United States has withheld the sum of One Thousand One Hundred Eighty-four Dollars Twenty Cents ($1,184.20) of the amount demanded from monies due from the Government to the defendants and has also withheld interest thereon in the amount of Forty-seven Dollars Thirty-seven Cents ($47.37). The balance of said determination in the sum of Fifty-eight Thousand Eight Hundred Fifteen Dollars Eighty Cents ($58,815.80) is now due, owing and unpaid."

The credit mentioned in paragraph 9, above, was for taxes and interest withheld.

The former partners of the Frantz Equipment Company filed an answer to the complaint in the District Court on March 9, 1946, and included therein a counterclaim

for $12,727.21 under one of the contracts, hereinbefore mentioned, with the defendant dated December 28, 1943, No. W–36–109–eng–279.

Various preliminary proceedings and hearings have been held in the District Court in said suit, among which were the filing by the United States, on July 2, 1946, of a motion for summary judgment on the pleadings, a hearing on such motion January 30, 1949, and an opinion by the District Judge, June 25, 1950, denying said motion for summary judgment. 91 F.Supp. 579.

The plaintiff in the instant proceeding, as hereinbefore mentioned, filed its original petition in this court on August 10, 1950, and in response thereto the defendant filed a plea to the jurisdiction of this court under Sec. 1500 of the U.S.Code, Title 28 (1948 Ed.). Upon this plea to the jurisdiction, this court in an opinion, 98 F.Supp. 579, 120 Ct.Cl. 312, sustained the Government's plea as to the first cause of action contained in plaintiff's petition under the first contract of December 28, 1943, and denied the plea as to claim for $14,464.03 under the second contract of September 15, 1944, W–30–482–eng–2348. This court, in its opinion on defendant's jurisdictional plea, pointed to the fact that the work for which the said sum of $12,727.21 was claimed in this court, was performed in June and July, 1944, and that said contract was completed more than six years prior to the filing of the original petition in this court on August 10, 1950.

Thereafter, on October 5, 1951, the defendant filed in this court an answer to plaintiff's petition for the recovery of $14,464.03 under the contract of September 15, 1944, admitting that the Government was indebted to plaintiff under said contract in the amount of at least $2,226.00.

With this answer the defendant filed a counterclaim against plaintiff for $40,198.05 based upon the unilateral determination made by the Under Secretary of War on December 20, 1943, under the Renegotiation Act of 1942, in which he determined that plaintiff's predecessor, the Frantz Equipment Company, a partnership, had realized excessive profits under other contracts and subcontracts, not involved in this proceeding, for its fiscal year ending September 30, 1942. This counterclaim contains, among others, the following allegations:

"16. On information and belief, plaintiff became, on or about June 1, 1947, the successor of Frantz Equipment Company, a Partnership, and assumed all liabilities, including the liability for excessive profits set forth in paragraph 15 of this answer and counterclaim, of such predecessor Partnership and, at all times material herein, has continued and still continues as such successor of such predecessor Partnership.

"17. After proper allowance and credit to Frantz Equipment Company, a Partnership, and its successor, plaintiff herein, of all applicable tax credits and adjustments in conformance with the 1942 Renegotiation Act, as amended, and of all credits arising from collections made by defendant by means of withholding orders issued pursuant to such Act, as amended, there remains due and owing to defendant from plaintiff and its predecessor Partnership the sum of $40,198.05, plus interest, at the rate of six percent (6%) per annum, on the sum of $35,359.08 from and including September 24, 1951, to and including date of payment.

"18. Despite repeated oral and written demand made by defendant on plaintiff and its predecessor Partnership, neither plaintiff nor anyone else has paid to defendant, or any of its duly-authorized agents or representatives, the obligation and indebtedness, in whole or in part, set forth in paragraph 17 of this answer and counterclaim.

"Wherefore, defendant prays for judgment dismissing the amended petition herein, with prejudice, and for judgment against plaintiff in the sum of $40,198.05, together with interest on the sum of $35,359.08, at the rate of six percent (6%) per annum, from and including September 24, 1951, to and including date of payment, for the costs of this action, and for such other

494

and further relief as may be just, proper, and meet in the premises."

The plaintiff has filed a motion to dismiss defendant's counterclaim on the grounds (1) that the counterclaim in this court and the suit brought by the United States, and now pending in the United States District Court for the Eastern District of Pennsylvania, are both predicated on the same cause of action; (2) that the plaintiff herein has demanded and is entitled to a trial by jury, under the Seventh Amendment to the Constitution, of the civil suit in the District Court, and that the District Court has ordered that said suit proceed to trial; (3) that the counterclaim filed in this court should be dismissed by the court in the exercise of its discretion on the ground that the defendant should not be permitted to carry on two suits for the same cause of action at the same time; and (4) that the counterclaim is in effect an attempt by the Government to transfer to this court the suit in the District Court, of which that court has full jurisdiction under the statute, and to deprive the plaintiff of its constitutional right of trial by jury of said Civil Action No. 5029 in the District Court.

Section 1503 of Title 28 U.S.C., 1948 Edition, provides that—

"The Court of Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court."

Prior to the passage of the Act, effective September 1, 1948, "To revise, codify, and enact into law title 28 of the United States Code, entitled 'Judicial Code and Judiciary' ", Sec. 1503, above quoted, as contained in Sec. 250, Title 28 U.S.C., 1946 Edition, Judicial Code § 145, provided as follows:

"The Court of Claims shall have jurisdiction to hear and determine the following matters:

* * * * * *

"Second. All set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States

against any claimant against the Government in said Court: * * *."

Section 1503, supra, made no change in the substance and effect of this jurisdictional provision, as contained in the original statute defining the jurisdiction of this court:

In McElrath v. United States, 102 U.S. 426, 439–440, 26 L.Ed. 189, the court said:

"We come now to inquire whether the Court of Claims erred in awarding judgment against the appellant [McElrath] for the amount paid to him out of the treasury of the United States upon the settlement of his accounts.

"Upon this branch of the case counsel for the claimant contends that so much of the act of March 3, 1863, as invests the Court of Claims with power to render judgment in favor of the United States against a claimant, is in violation of the Seventh Amendment of the national Constitution, which provides that in suits at common law, * * * the right to trial by jury shall be preserved.

"That section, referring to the trial of causes in which the government may plead against the claimant any set-off, counterclaim, claim for damages, or other demand, provides that the court shall hear and determine such claim and demand both for and against the government and claimant; and if, upon the whole case, the court finds that the claimant is indebted to the government, it 'shall render judgment to that effect, and such judgment shall be final, with the right of appeal, as in other cases provided for by law.' There is nothing in these provisions which violates either the letter or spirit of the Seventh Amendment. Suits against the government in the Court of Claims, whether reference be had to the claimant's demand, or to the defence, or to any set-off, or counterclaim which the government may assert, are not controlled by the Seventh Amendment. They are not suits at common

law within its true meaning. The government cannot be sued, except with its own consent. It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits. It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States. Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the government in the special court organized for that purpose, he may be met with a set-off, counterclaim, or other demand of the government, upon which judgment may go against him without the intervention of a jury, if the court, upon the whole case, is of opinion that the government is entitled to such judgment. If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the government to the exercise of the privilege. Nothing more need be said on this subject."

██ By instituting suit in this court to recover the amount of $14,464.03 alleged to be due from the Government under the contract of September 15, 1944, we think the plaintiff, under the plain terms of the statute defining the jurisdiction of this court and giving to the United States the right to assert counterclaims and claims for offsets, undeniably subjected itself to the assertion against it by the Government of the counterclaim interposed in this proceeding. We are not at liberty, by interpretation, to limit or restrict the plain and broad terms of the statute relating to the right of the Government to assert counterclaims and to the jurisdiction of this court to hear and determine such claims. Nor do we think that defendant lost its right to assert a counterclaim in this court by reason of the fact that the United States, prior to the filing by plaintiff of its petition in this court, instituted a civil suit against plaintiff's predecessor in the U. S. District Court to recover excessive profits alleged to be due the United States as a result of a renegotiation determination made by the Secretary of War, under Section 403(c) of the Renegotiation Act of 1942, as amended.

The plaintiff, as its petition in this court shows, brought this suit to recover the amounts alleged to be due under two contracts with the Government, not involved in the renegotiation determination, because the United States, through the War Department with which such contracts were made, had withheld payment of the sums due under such contracts on account of the determination by the Secretary of War that the plaintiff's predecessor partnership was indebted to the United States for excessive profits paid to it under other contracts.

Section 403(c)(2) of the Renegotiation Act of 1942, 56 Stat. 219, 245, as amended by Section 801 of the Act of October 21, 1942, 56 Stat. 798, 982, 983, provides, so far as here material, as follows:

"(2) Upon renegotiation, the Secretary is authorized and directed to eliminate any excessive profits under such contract or subcontract (i) by reductions in the contract price of the contract or subcontract, or by other revision in its terms; or (ii) by withholding, from amounts otherwise due to the contractor or subcontractor, any amount of such excessive profits; or (iii) by directing a contractor to withhold for the account of the United States, from amounts otherwise due to the subcontractor, any amount of such excessive profits under the subcontract; or (iv) by recovery from the contractor or subcontractor, through repayment, credit or suit, of any amount of such excessive profits actually paid to him; or (v) by any combination of these methods, as the Secretary deems desirable. The Secretary may bring actions *on behalf of the United States* in the appropriate courts of the United States to recover from such contractor or subcontractor, any amount of such excessive profits actually paid to him and not withheld or eliminated by some other method under this subsection. * * * All money recovered by way of repayment or suit under this subsection shall be covered into the Treasury as miscellaneous receipts."

In our opinion the Government is entitled under the language of this Act not only to bring a civil action against the contractor in the District Court but also, and notwithstanding such suit, to assert by way of offset or counterclaim in a suit brought by the contractor in this court, the amount of any excessive profits alleged to be due from such contractor.

In view of the facts, the provisions of the statutes referred to and the opinion in McElrath v. United States, supra, we are of the opinion that the decisions in the cases of In re Johnson, 167 U.S. 120, 17 S.Ct. 735, 42 L.Ed. 103; Harkrader v. Wadley, 172 U.S. 148, 164, 19 S.Ct. 119, 43 L.Ed. 399; In re Georgia Power Co. and Georgia Power Co. v. Tennessee Valley Authority, 5 Cir., 89 F.2d 218, 220; and United States v. Jepson, D.C., 90 F.Supp. 983, 986, are to be distinguished, and are not controlling here.

 The civil action brought by the United States in the District Court is not transferred to this court by the filing by the Government of a counterclaim in the instant case based upon the same claim. The District Court still retains jurisdiction to proceed with the trial of that case. In the circumstances and under the terms of the statutes both the District Court and this court have jurisdiction of claim made by the United States. Only this court has original jurisdiction of plaintiff's claim since it is for an amount in excess of $10,000, and under the terms of our jurisdictional statute and the rule of the McElrath case, supra, the plaintiff, by instituting suit in this court, impliedly consented, as a condition to such right to sue the United States, that any counterclaim interposed by the United States should be heard and determined by this court without the intervention of a jury. The right to a jury trial in a civil case may be waived.

In view of the provisions of the statutes referred to and of the facts and circumstances of this case, we are of the opinion that the position of plaintiff on its motion to dismiss defendant's counterclaim is not well taken, and the motion is, therefore, denied. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and WHITAKER, Judges, concur.