# United States Court of Appeals for the Federal Circuit

2008-5102

EASTERN SHAWNEE TRIBE OF OKLAHOMA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Brian J. Leinbach, Engstrom, Lipscomb & Lack, of Los Angeles, California, argued for plaintiff-appellant.

Aaron P. Avila, Trial Attorney, Environment and Natural Resource Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was John C. Cruden, Acting Assistant Attorney General.

Appealed from: United States Court of Federal Claims

Judge Charles F. Lettow

# United States Court of Appeals for the Federal Circuit

2008-5102

EASTERN SHAWNEE TRIBE OF OKLAHOMA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in case 06-CV-917, Judge Charles F. Lettow.

———————————————

DECIDED:   September 17, 2009

———————————————

Before GAJARSA, DYK, and MOORE, Circuit Judges.

Opinion for the court filed by Circuit Judge DYK.  Concurring opinion filed by Circuit Judge MOORE.

DYK, Circuit Judge.

The Eastern Shawnee Tribe of Oklahoma ("the Tribe") brought suit in the Court of Federal Claims, alleging that the United States had breached fiduciary and other duties as trustee of property and other assets owned by the Tribe.  The Court of Federal Claims dismissed the case without prejudice, holding that 28 U.S.C. § 1500 precluded the Court of Federal Claims' jurisdiction over the Tribe's claims because the Tribe had earlier filed a district court complaint "aris[ing] from the same operative facts and seek[ing] essentially the same relief."  E. Shawnee Tribe of Okla. v. United States, 82 Fed. Cl. 322, 329 (2008).  Recently in Tohono O'odham Nation v. United States, 559 F.3d 1284 (Fed. Cir. 2009), we held in similar circumstances that § 1500 was

inapplicable because the complaints sought different relief in the Court of Federal Claims and in the district court. Accordingly, we reverse and remand.

INTRODUCTION

The United States has important trust obligations to Indian tribes. Various suits have been brought asserting breaches of those duties, including the failure to provide an accurate accounting of lease payments received by the United States on behalf of the tribes, an obligation that is now reinforced by statute. See American Indian Trust Fund Management Reform Act of 1994, Pub. L. No. 103-412, 108 Stat. 4239 (codified at 25 U.S.C. §§ 4001–61). This case once again involves claims by an Indian tribe against the United States for breach of such trust duties, as well as questions as to the respective jurisdictions of the United States District Court for the District of Columbia and the Court of Federal Claims.

The Administrative Procedure Act ("APA") appears to provide that claims seeking monetary recovery and an equitable accounting for breach of trust duties must be brought in the Court of Federal Claims. Under the APA, the district court lacks jurisdiction unless parties are "seeking relief other than money damages." 5 U.S.C. § 702. Claims for monetary recovery and an equitable accounting appear to be essentially for "money damages" (as the Court of Federal Claims held here, E. Shawnee, 82 Fed. Cl. at 329). As the Supreme Court has recently noted, "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." Great-West Life & Annuity

Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) (quoting Bowen v. Massachusetts, 487 U.S. 879, 918-919 (1988) (Scalia, J., dissenting)) (alteration in original) (quotation marks omitted). In addition, the district court lacks jurisdiction unless "there is no other adequate remedy in a court." 5 U.S.C. § 704. Again there appears to be an "adequate remedy" in the Court of Federal Claims. The Court of Federal Claims can award monetary relief and appears to have the authority to order an equitable accounting as ancillary relief, the Tucker Act having been amended in 1982 "to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, see 28 U.S.C. §§ 1491(a)(2), (b)(2)." Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998).[1]

The United States Court of Appeals for the District of Columbia Circuit—we think incorrectly—has nonetheless held that §§ 702 and 704 of the APA do not bar a suit in the district court for an equitable accounting and the award of monetary relief, though it has agreed that some forms of monetary relief are unavailable in the district court and must be sought in the Court of Federal Claims. See Cobell v. Norton, 240 F.3d 1081, 1094, 1104 (D.C. Cir. 2001). The result is that responsibility for resolving these breach of trust controversies is split between the district court and the Court of Federal Claims.

The question presented here is whether a suit filed in the Court of Federal Claims seeking relief that was not sought in the district court and that the district court cannot

---

[1] Before the 1982 amendment the Court of Federal Claims appears to have lacked such authority. See Klamath & Modoc Tribes v. United States, 174 Ct. Cl. 483, 487 (1966) ("It is fundamental that an action for accounting is an equitable claim and that courts of equity have original jurisdiction to compel an accounting. Our general jurisdiction under the Tucker Act does not include actions in equity." (citations omitted)).

2008-5102                          3

award (even under the D.C. Circuit's expansive theory of district court jurisdiction) is barred by the provisions of 28 U.S.C. § 1500.

Section 1500 provides that "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500.

## BACKGROUND

The Tribe is a federally recognized sovereign Indian tribe living in northeastern Oklahoma. The United States holds and manages funds, land, and resources in trust for the Tribe.

On December 20, 2006, the Tribe filed a complaint in the District Court for the District of Columbia against the Secretary of the Interior, the Special Trustee for American Indians, and the Secretary of the Treasury, alleging that the United States had breached its trust duties to the Tribe. See Complaint at 10, E. Shawnee Tribe of Okla. v. Salazar, No. 1:06-cv-02162-JR (D.D.C. Dec. 20, 2006) ("District Ct. Compl.").[2] In the district court, the Tribe characterized its suit as an action "for an accounting and a reconciliation of its trust funds, for equitable relief, and for such other relief as the Court deems appropriate." Id. at 1. The Tribe sought several forms of relief in the district court, specifically asking:

1. For a declaration that the Defendants have not provided the Plaintiff with a complete, accurate and up to date accounting of the Plaintiff's trust funds as required by law.

---

[2] This district court litigation has been temporarily stayed in order to allow the parties to attempt settlement or alternative dispute resolution. See Parties' Joint Status Report at 7, E. Shawnee Tribe of Okla. v. Salazar, No. 1:06-cv-02162-JR (D.D.C. July 15, 2009).

2008-5102                                      4

2. For a declaration that by so doing, the Defendants have deprived the Plaintiff of the ability to identify whether it has suffered a loss, as well as any specific claims that it might have against the Defendants for their mismanagement of those funds.

3. For a mandatory injunction requiring the Defendants to provide a full and complete accounting of the Plaintiff's trust funds.

4. For a judicial order preserving any claims that the Plaintiff might uncover once it receives that accounting.

5. For an order directing the Defendants to manage all of the Plaintiff's current and future trust funds, properties and resources in full compliance with all applicable law and with their duties as the Plaintiff's guardian and trustee.

6. For an award of cost of suit, without limitation, attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. Section 2412, and other applicable federal statues, and under general principals [sic] of law and equity, and the fees and costs for expert assistance.

7. For such other relief as may be just and equitable.

Id. at 13.

Eight days later, on December 28, 2006, the Tribe filed a complaint in the Court of Federal Claims, alleging that the United States had breached its trust duties to the Tribe. See Complaint at 1, E. Shawnee Tribe of Okla. v. United States, 82 Fed. Cl. 322 (2008) (No. 1:06-cv-00917-CFL). In the Court of Federal Claims, the Tribe characterized its suit as an action "for money damages, with interest" from the failure of the United States to "generate, invest and manage the Plaintiff's tribal trust assets and property in the manner prescribed by applicable law." Id. The relief specifically requested by the Tribe was:

1. Consequential damages according to proof,
2. Incidental damages according to proof,
3. Compound interest on liquidated amount and judgment awards.
4. Pre-judgment interest,
5. Costs of the suit herein,

6. Attorneys fees, according to statute
7. Any and all other relief or damages as permitted by this Court or applicable law.

Id. at 17.

In January 2008, the Court of Federal Claims ordered the Tribe to show cause why its case should not be dismissed in light of 28 U.S.C. § 1500. After additional briefing by both parties and a hearing, the court determined that the Tribe's claims in the district court and the Court of Federal Claims were "basically different manifestations of the same underlying claim that the government failed properly to administer and manage Eastern Shawnee's trust land and assets." E. Shawnee, 82 Fed. Cl. at 326. The court also determined that "the accounting sought [in the district court] is 'in essence' a claim for money damages," noting that such a claim would then "fall under the exclusive jurisdiction" of the Court of Federal Claims. Id. at 329. The court concluded that § 1500 removed its jurisdiction of the Tribe's case because the Tribe's claim for damages in the Court of Federal Claims arose "from the same operative facts and [sought] essentially the same relief as that sought by the Tribe in a case filed eight days earlier in district court," and dismissed the Tribe's suit without prejudice. Id. at 329.

The Tribe timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review without deference dismissals by the Court of Federal Claims for lack of jurisdiction. Sacco v. United States, 452 F.3d 1305, 1308 (Fed. Cir. 2006).

I

In <u>Keene Corp. v. United States</u>, the Supreme Court interpreted the term "claim" in § 1500. 508 U.S. 200, 210–14 (1993). The Court held that under § 1500, "the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested." <u>Id.</u> at 212. In <u>Loveladies Harbor, Inc. v. United States</u>, following <u>Keene</u>, we held that "[f]or the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from <u>the same operative facts</u>, and must seek <u>the same relief</u>." 27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc). The plaintiff here does not persuasively dispute that the claims in the district court and the Court of Federal Claims arise from the same set of operative facts. The question is whether the complaints seek the same relief.

In <u>Tohono</u> we examined similar issues involving the jurisdiction of the Court of Federal Claims under § 1500. The Tohono O'odham Nation ("the Nation") had filed a complaint in district court seeking an accounting and corrected statement of the Nation's assets held in trust by the United States, and then had filed a complaint in the Court of Federal Claims seeking money damages from the United States for breaching its fiduciary duty as trustee. <u>Tohono</u>, 559 F.3d at 1285–86.

We applied in <u>Tohono</u> the test for jurisdiction under § 1500 set forth in our opinion in <u>Loveladies</u>. We emphasized in <u>Tohono</u> that "it is the relief that the plaintiff <u>requests</u> that is relevant under § 1500," 559 F.3d at 1291, citing the Supreme Court's decision in <u>Keene</u>, 508 U.S. at 212 (discussing "overlap in the relief requested").

In Tohono we distinguished between the Nation's claims in the district court, which sought only equitable relief, and the Nation's claims in the Court of Federal Claims, which sought only damages at law. Tohono, 559 F.3d at 1289. We concluded that the district court complaint requested an equitable accounting and restatement of the Nation's trust accounts and that the Court of Federal Claims complaint requested a legal remedy—"essentially consequential damages." Id. at 1290. We also distinguished the Nation's district court complaint as seeking "old money," characterized as "money that is already in the government's possession, but that erroneously does not appear in the Nation's accounts," from the Nation's Court of Federal Claims complaint seeking "new money," such as consequential damages and lost profits. Id. We concluded that the availability of an accounting in aid of judgment in the Court of Federal Claims "does not transform [an] unambiguous request for damages into a request for an accounting." Id. at 1291. Thus, we held that because the Nation had requested different relief in the district court and the Court of Federal Claims, the Court of Federal Claims had jurisdiction to hear the Nation's claims.

The basic holding in Tohono is that § 1500 is not a bar to claims seeking relief in the Court of Federal Claims where different relief is sought in the Court of Federal Claims and the relief sought in the Court of Federal Claims could not be awarded in the district court action. See id. at 1292 ("The Nation's complaint in the Court of Federal Claims seeks only . . . relief that the Nation has not requested in the district court, and which the district court is, in any event, powerless to award.").[3] Here, because

---

[3] The concurrence here curiously suggests that this reading of Tohono "expands" the exception recognized by that case. We do no such thing. We simply recognize that Tohono imposes a dual requirement.

consequential damages were not sought in the district court and the district court could not award consequential damages, § 1500 is not a bar to the Court of Federal Claims action. If claimants were barred by § 1500 from filing such a suit in the Court of Federal Claims with respect to claims not brought in the district court, the statute of limitations could well run on such claims during the pendency of the district court proceeding. On the other hand, if the protective filing of such claims were allowed, the government's interest in avoiding duplicative proceedings could be addressed by staying the Court of Federal Claims proceedings pending the outcome of the district court proceedings. Cf. Tohono, 599 F.3d at 1291–92.

II

As a panel, we are bound by the earlier decision in Tohono. For the same reasons described in Tohono, § 1500 does not bar the Court of Federal Claims here from exercising jurisdiction over the Tribe's claims.

The Tribe's Court of Federal Claims complaint here and its complaint in the district court differentiated the monetary relief sought in each court even more clearly than the two complaints in Tohono. Unlike the plaintiff in Tohono, who sought restitution and disgorgement in the district court in addition to an accounting, the Tribe here sought only a general accounting of its trust assets in the district court. In addition, here the Tribe's district court complaint disavowed at least some claims for money damages, stating that "[t]he Tribe may have claims to damages that cannot be ascertained until after the Defendants make a reconciliation and accounting of the Tribe's trust property and accounts" and that "[s]ome of these claims, should they exist, will have to be filed in the United States Court of Federal Claims." District Ct. Compl. at 12. Under Tohono,

the Tribe thus requested different relief in the district court than in the Court of Federal Claims, and § 1500 is inapplicable.[4]

We reverse the dismissal of the Tribe's suit and remand the case to the Court of Federal Claims.

REVERSED AND REMANDED

COSTS

No costs.

---

[4]     Following oral argument in this case, we requested supplemental briefing on the issue of whether § 1500 is applicable when the district court lacks jurisdiction over the claims asserted in district court. Both parties argued in their supplemental briefs that a district court's jurisdiction over the claims asserted in district court (as opposed to its jurisdiction over the claims asserted in the Court of Federal Claims) is in general irrelevant to a § 1500 analysis under Frantz Equip. Co. v. United States, 98 F. Supp. 579, 580 (Ct. Cl. 1951). However, both parties also recognized that the majority opinion in Loveladies concluded that a § 1500 analysis is inapplicable to a claim over which the district court concludes it lacks jurisdiction. See Loveladies, 27 F.3d at 1554 (concluding that because the district court had determined that it did not have jurisdiction to hear a takings claim, that claim was "without legal significance" in a § 1500 analysis). In the district court, the Tribe sued under the APA. See District Ct. Compl. at 2–3 (asserting that the district court has jurisdiction under 5 U.S.C. §§ 702, 704, and 706). As we have noted earlier, under § 702 the district court lacks jurisdiction unless parties are "seeking relief other than money damages." 5 U.S.C. § 702. Under § 704 it lacks jurisdiction unless "there is no other adequate remedy in a court." Id. § 704. There is a serious question here as to the district court's jurisdiction. However, we need not reach this issue in light of our earlier decision in Tohono.

# United States Court of Appeals for the Federal Circuit

2008-5102

EASTERN SHAWNEE TRIBE OF OKLAHOMA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in case 06-CV-917, Judge Charles F. Lettow.

MOORE, Circuit Judge, concurring.

The only question before this court is whether, under 28 U.S.C. § 1500, the Tribe's suit in the United States District Court for the District of Columbia "was based on substantially the same operative facts . . . at least if there was some overlap in the relief requested" as its suit in the Court of Federal Claims. Keene v. United States, 508 U.S. 200, 212 (1993). I agree that we must reverse the Court of Federal Claims because the answer to this question is no, but I write separately to express my reasons for the decision and my concerns over the majority's unnecessary and troubling expansion of the test under § 1500.

There is only one standard for applying § 1500—the one announced by the Supreme Court in Keene. We could not and did not modify this standard in Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc), or in Tohono O'odham Nation v. United States, 559 F.3d 1284 (Fed. Cir. 2009). In order to fall within § 1500, the two suits must have both "substantially the same operative facts"

and there must be "at least . . . some overlap in the relief requested." <u>Keene</u>, 508 U.S. at 212. It is contrary to <u>Keene</u> to apply § 1500 to two complaints that have no overlap in the relief requested. It is equally contrary to require that the relief requested in the two complaints be the same. None of the language in <u>Loveladies</u> or <u>Tohono</u> may be read to contravene <u>Keene</u> in these ways. <u>Loveladies</u> held that "[i]f the claims are distinctly different, Loveladies are excused from the jurisdictional dance required by § 1500." 27 F.3d at 1549. This holding is fully consistent with <u>Keene</u> because distinctly different claims have no overlap in the relief requested. Yet <u>Loveladies</u> creates some understandable confusion: "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief." <u>Id.</u> at 1551; <u>see</u> <u>Tohono</u>, 559 F.3d at 1288 ("Under the test set forth in <u>Loveladies</u>, § 1500 is applicable only if two claims arise from the same operative facts and seek the same relief."). When presented with such an ambiguity, we must read our cases as consonant with Supreme Court precedent. Indeed, the ultimate holding of <u>Loveladies</u> leaves no doubt that the standard is substantially the same operative facts and some overlap in the relief requested: "[T]he claims in the two courts are for distinctly different and not the same or even overlapping relief—this case presents the straightforward issue of plaintiffs who seek distinctly different types of relief in the two courts." 27 F.3d at 1554.

Moreover, I cannot agree with the majority that "[t]he basic holding in <u>Tohono</u> is that § 1500 is not a bar to claims seeking relief in the Court of Federal Claims where different relief is sought in the Court of Federal Claims and the relief sought in the Court of Federal Claims <u>could not be awarded in the district court action</u>." Maj. Op. at 8. With

all due respect to the majority, the narrow holding of <u>Tohono</u> is clear: "Because we conclude that the Nation's complaint in the Court of Federal Claims seeks relief that is different from the relief sought in its earlier-filed district court action, we reverse." <u>Tohono</u>, 559 F.3d at 1285; <u>see also</u> <u>id.</u> at 1293 ("Because the relief requested in the Nation's district court complaint is different from the relief requested in its Court of Federal Claims complaint, § 1500 does not divest the Court of Federal Claims of jurisdiction."); <u>id.</u> at 1289-91 (detailing the different relief sought in the two complaints). Section 1500 turns on the relief sought, not the jurisdictional limitations of the courts. <u>See</u> <u>Dico v. United States</u>, 48 F.3d 1199, 1204 (Fed. Cir. 1995) ("[I]t is the responsibility of the plaintiff to allege, clearly and with specificity, that different claims are involved in its two actions."). As <u>both</u> parties in this case argued in supplemental briefing, the jurisdiction of the district court is irrelevant in a § 1500 analysis:

> The applicability of Sec. 1500 to the first claim of plaintiff, asserted in its petition herein, is not conditioned upon the question of whether the District Court had jurisdiction of the claim asserted by the plaintiff therein; and it is not necessary to the decision, upon the defendant's plea to the jurisdiction of this court, for us to discuss the question of whether or not the District Court does or does not have jurisdiction of the counterclaim filed by plaintiff therein.

<u>Frantz Equip. Co. v. United States</u>, 98 F. Supp. 579, 580 (Ct. Cl. 1951). The majority's interpretation of the holding in <u>Tohono</u>, which incorporates an evaluation of the relief that can be awarded in the district court, contravenes the binding precedent of <u>Frantz</u>.[1]

---

[1] <u>Loveladies</u> is not to the contrary. <u>See</u> Maj. Op. at 10 n.1. In that case, we did not evaluate the district court's jurisdiction. Rather, the <u>district court</u> dismissed the takings claim before it. Even this act of dismissal is irrelevant to the § 1500 analysis. <u>See</u> <u>Keene</u>, 508 U.S. at 204 (applying § 1500 to a Court of Federal Claims complaint even though the district court had dismissed the complaint filed there five days after the first complaint was filed in the Court of Federal Claims).

The majority may be justifiably concerned that the district court lacks jurisdiction to entertain a suit that serves as a legal predicate for money damages. But that issue is not before us. The proper fora for that dispute are the district court and the Court of Appeals for the District of Columbia Circuit.

There is no doubt that under our holding in <u>Tohono</u>, we must reverse. In <u>Tohono</u>, we held that § 1500 did not apply to the two complaints, and here, the Tribe took much greater pains to distinguish the relief it seeks in its two suits than the Tohono O'odham Nation did in <u>Tohono</u>. <u>See</u> Maj. Op. 9. Even without the close factual analogy of <u>Tohono</u> to aid us, I would reverse because the district court complaint lacks requests for restitution and disgorgement. <u>See</u> <u>Tohono</u>, 559 F.3d at 1295-96 (Moore, J., dissenting).